IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

|  |  |
|---|---|
| NOSIRRAH MANAGEMENT, LLC,<br><br>    Plaintiff,<br><br>v.<br><br>AUTOZONE, INC.,<br><br>    Nominal Defendant,<br><br>    and<br><br>WILLIAM C. RHODES III,<br><br>    Defendant. | Case No. 2:24-cv-2167 |

**ORDER DENYING MOTION TO DISMISS**

Before the Court is Defendant William C. Rhode III's ("Defendant's" or "Rhodes'") Motion to Dismiss and accompanying Memorandum of Law, filed on May 23, 2024. (ECF No. 10.) Because Plaintiff Nosirrah Management, LLC ("Plaintiff" or "Nosirrah") has sufficiently pled facts to state a claim upon which relief can be granted, Defendant's Motion is **DENIED**.

**I.    BACKGROUND**

   **A.    Complaint and Subject Matter Jurisdiction**

On March 13, 2024, Plaintiff filed its Complaint seeking to recovery short-swing profits under 15 U.S.C. § 78p(b), otherwise known as Section 16(b) of the Securities Exchange Act of 1934 ("Section 16(b)"). (ECF No. 1.)

In its Complaint, Plaintiff alleges it is a shareholder of Nominal Defendant AutoZone ("Nominal Defendant" or "AutoZone"). (Id. at PageID 1.) Plaintiff alleges that on March 14, 2022, and April 7, 2022, Defendant made purchases of AutoZone common stock. (Id. at PageID 2.) Then, between December 16, 2021, and July 18, 2022, Defendant allegedly sold the AutoZone stock, resulting in a profit of approximately $1,046,503. (Id. at PageID 2–3.)

Between September 2022 and January 2024, Plaintiff and AutoZone communicated via email and telephone regarding the alleged short-swing profit. (Id. at PageID 3.) On January 10, 2024, AutoZone confirmed it would not "pursue disgorgement" of the alleged short-swing profit. (Id. at PageID 4.) Plaintiff avers AutoZone's decision was based on the fact that the March 14 and April 7 purchases were from Defendant's grantor retained annuity trusts ("GRATs"). (Id.)[1]

The Court has subject matter jurisdiction under 15 U.S.C. § 78aa. (ECF No. 1 at PageID 1.)

**B.     GRATs**

A GRAT is an irrevocable trust which "exists for a specified period of time." (ECF No. 10-3 at PageID 57.) It is "funded with assets (frequently stock) contributed by the grantor." (ECF No. 10-1 at PageID 31 (quoting Peter J. Romeo & Alan L. Dye, Section 16 Treatise and Reporting Guide § 6.02(3)(c), at 557 (5th ed. 2019)).) "The annuity payments to the grantor can be made in cash or in kind (e.g., in securities valued at their fair market value on payment date)." (ECF No. 10-3 at PageID 57.) "After the expiration of the annuity payment period, the assets remaining in the GRAT, if any, are transferred to the residual beneficiaries." (Id.)

---

[1] Neither the Complaint nor the Motion to Dismiss attached the terms of the GRATs. Thus, the Court can only rely on Parties' description of the GRATs.

C.     **Defendant's Motion to Dismiss**

On May 23, 2024, Defendant filed his Motion to Dismiss and accompanying Memorandum of Law.  (ECF No. 10.)[2]  In his Motion, Defendant states he "was the settlor, trustee, and sole lifetime beneficiary of the GRATs at issue."  (ECF No. 10-1 at PageID 32.)  He states he "funded the GRATs with shares of AutoZone common stock," which were contributed subject to an annuity obligation.  (Id. at PageID 32–33.)  Defendant argues the March 14 and April 7 transactions were not purchases of AutoZone stock, but rather in-kind annuity payments under the terms of the GRATs.  (Id. at PageID 33.)

Defendant argues the GRAT annuities are exempt from Section 16(b) by operation of SEC Rule 16a-13, as his acquisition of the AutoZone stock from the GRATs "merely changed the form of his beneficial ownership over the stock, from indirect to direct, without changing his pecuniary interest in the securities."  (ECF No. 10-1 at PageID 37.)

Defendant's Motion was fully briefed on July 5, 2024.  (See ECF Nos. 23 (Response), 26 (Reply).)  Plaintiff also filed a letter brief regarding the Supreme Court's decision in Loper Bright Enterprises v. Raimondo, stating Defendant's argument is weakened due to the overruling of Chevron U.S.A., Inc. v. Natural Resources Defense Council, 467 U.S. 837 (1984).  (ECF No. 27 at PageID 223 (citing 144 S. Ct. 2244, 2247 (2024)).)  Defendant filed a response letter brief contesting this.  (ECF No. 28.)

---

[2] Nominal Defendant also filed a motion to dismiss, (ECF No. 16), where Plaintiff agreed that if the Court grants Defendant's Motion, then the case should be dismissed as to Nominal Defendant.  (ECF No. 24 at PageID 208.)

## II.     LEGAL STANDARDS

### A.     Failure to State a Claim

Federal Rule of Civil Procedure 12(b)(6) allows dismissal of a complaint that "fail[s] to state a claim upon which relief can be granted." It permits the "defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true." Mayer v. Mylod, 988 F.2d 635, 638 (6th Cir. 1993) (citing Nishiyama v. Dickson Cnty., 814 F.2d 277, 279 (6th Cir. 1987)). If a court decides that the claim is not plausible, the case may be dismissed at the pleading stage. Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).

When evaluating a 12(b)(6) motion, the Court must determine whether the complaint alleges "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 679 (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is plausible on its face if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id., 556 U.S. at 678 (citing Twombly, 550 U.S. at 556); see also Hill v. Blue Cross & Blue Shield of Mich., 409 F.3d 710, 720 (6th Cir. 2005) ("accept[ing] as true the complaint's allegations," the Court "draw[s] all reasonable inferences from them in favor of [the plaintiff]").

A complaint need not contain detailed factual allegations. Twombly, 550 U.S. at 570. A plaintiff without facts who is "armed with nothing more than conclusions," however, cannot "unlock the doors of discovery." Iqbal, 556 U.S. at 678–79; Green v. Mut. of Omaha Ins. Co., No. 10-2487, 2011 WL 112735, at *3 (W.D. Tenn. Jan. 13, 2011), aff'd, 481 F. App'x 252 (6th Cir. 2012). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Iqbal, 556 U.S. at 679. "[A] formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555.

4

### B.      Section 16(b) Liability and Rule 16a-13 Exemption

"Section 16(b) provides that officers, directors, and holders of more than 10% of the listed stock of any company shall be liable to the company for any profits realized from any purchase and sale or sale and purchase of such stock occurring within a period of six months." Sterman v. Ferro Corp., 785 F.2d 162, 165 (6th Cir. 1986) (cleaned up).  Its purpose is to "prevent the unfair use of information which may have been obtained by such beneficial owner by reason of his relationship to the issuer."  Id. (cleaned up).  "Because Congress intended section 16(b) to be a 'relatively arbitrary rule capable of easy administration,' courts generally interpret the statute so as to preserve its 'mechanical quality.'"  Winston v. Fed. Exp. Corp., 853 F.2d 455, 456 (6th Cir. 1988) (other internal citation omitted) (citing Reliance Elec. Co. v. Emerson Electric Co., 404 U.S. 418, 425 (1972)).

As is clear from the statutory language, "liability under Section 16(b) does not attach unless the plaintiff proves that there was (1) a purchase and (2) a sale of securities (3) by an officer or director of the issuer or by a shareholder who owns more than ten percent of any one class of the issuer's securities (4) within a six-month period."  Gwozdzinsky v. Zell/Chilmark Fund, L.P., 156 F.3d 305, 308 (2d Cir. 1998).  A shareholder may bring suit to recover the short-swing profit, but must do so on behalf of the security issuer, where the profit is recovered by the issuer.  See Olagues v. Timken, 908 F.3d 200, 204 (6th Cir. 2018).

"The SEC, however, has provided specific exemptions from Section 16(b)'s general requirements."  Jordan v. Flexton, 729 F. App'x 282, 285 (5th Cir. 2018) (cleaned up). The specific exemption at issue is under SEC Rule 16a-13. (ECF No. 10-1 at PageID 36.)  Rule 16a-13 states "[a] transaction . . . that effects only a change in the form of beneficial ownership

5

without changing a person's pecuniary interest in the subject equity securities shall be exempt from section 16 of the [SEC] Act." 17 C.F.R. § 240.16a-13.

## III. ANALYSIS

The Court's analysis proceeds in four parts. First, the Court examines whether it can consider, at this stage of litigation, Defendant's statement that he was the "grantor, trustee, and sole lifetime beneficiary of the GRATs." (ECF No. 26 at PageID 218 (citing ECF No. 1 at PageID 4, 6).) Second, the Court analyzes whether Plaintiff has sufficiently pled the elements of Section 16(b) short-swing liability besides the element of "purchase." Third, the Court considers Defendant's argument for Rule 16a-13 exemption from liability under the element of "purchase." Finally, the Court analyzes whether Plaintiff has sufficiently pled the element of "purchase."

### A. Defendant's Statement Regarding Grantor, Trustee, and Beneficiary Status

"When a court is presented with a Rule 12(b)(6) motion, it may consider the [c]omplaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the [c]omplaint and are central to the claims contained therein." Bassett v. Nat'l Collegiate Athletic Ass'n, 528 F.3d 426, 430 (6th Cir. 2008) (citing Amini v. Oberlin Coll., 259 F.3d 493, 502 (6th Cir. 2001)).

In arguing the AutoZone stock acquisition is exempted under Rule 16a-13, Defendant states he is the "grantor, trustee, and sole lifetime beneficiary of the GRATs." (ECF No. 26 at PageID 218 (citing ECF No. 1 at PageID 4, 6).)[3] Plaintiff argues, however, that Defendant's statement relies on facts outside the Complaint. (ECF No. 23 at PageID 195–96.) Defendant

---

[3] In Defendant's initial Motion, he states "[he] was the settlor, trustee, and sole lifetime beneficiary of the GRATs at issue." (ECF No. 10-1 at PageID 32.)

counters "this is inconsequential because Plaintiff argues that its sole theory applies regardless of whether Rhodes served as trustee." (ECF No. 26 at PageID 218.)

First, the Court considers Defendant's citation to the Complaint and finds it does not support his statement regarding his grantor, trustee, and beneficiary status. Plaintiff's Complaint, at most, states that Defendant was the creator of the GRATs. (See ECF No. 1 at PageID 4.) This supports Defendant's statement regarding his "settlor" status, (ECF No. 10-1 at PageID 32), as the settlor is a "person who creates a trust." Restatement (Third) of Trusts § 3 (2003). Defendant's citation to the Complaint also supports his "grantor" status, (ECF No. 26 at PageID 218 (citing ECF No. 1 at PageID 4, 6)), as it equates a settlor to a grantor. (See ECF No. 1 at PageID 4.) There is, however, no support in the Complaint regarding Defendant's trustee or beneficiary status.

Nor is Defendant's statement regarding his trustee or beneficiary status supported by any exhibits, public records, or other attachments. See Bassett, 528 F.3d at 430. Defendant attached four exhibits to his Motion and Accompanying Memorandum: (1) an SEC No-Action Letter to Peter J. Kight (the "Kight Letter"); (2) excerpts from a treatise on Section 16(b) by Peter Romeo & Alan Dye ("Romeo & Dye"); (3) publicly available SEC Form 4 General Instructions; and (4) an article titled "Securities Law Considerations for Trusts and Estates Advisors: Part II." (See ECF Nos. 10-1, 10-2, 10-3, 10-4.) While the Court may consider each of these, see Bassett, 528 F.3d at 430, none support Defendant's statement regarding his trustee, or beneficiary status.

For his counterargument, Defendant states "[w]hile Plaintiff claims that [Defendant] relies on facts outside the Complaint regarding his status as trustee of the GRATs, this is inconsequential because Plaintiff argues that its sole theory applies regardless of whether [Defendant] served as trustee." (ECF No. 26 at PageID 218 n.1 (internal citations omitted).)

7

However, Defendant's counterargument is unavailing. First, Defendant cites no authority in support of its position. Second, Plaintiff's alternative argument does not weaken its initial argument that Defendant did not provide any proof of his trustee or beneficiary status. Defendant's argument regarding his pecuniary interest status, a key element of the Rule 16a-13 exemption, see infra Section III.C.ii.a, relies on his trustee and beneficiary status. Even if Defendant can defeat Plaintiff's alternative argument, its initial argument remains.

At this stage, the Court's "focus is upon the contents of . . . Plaintiff['s] [C]omplaint." Hill, 409 F.3d at 723. Indeed, Defendant's statements regarding his trustee and beneficiary status are nothing more than "bald assertions regarding the nature of its [GRAT]" because they do not derive support from the Complaint or other documents the Court may consider. See id. Thus, the Court cannot consider Defendant's statement regarding his status as the grantor, trustee, and beneficiary of the GRATs. See Bassett, 528 F.3d at 430.

      **B.**      **Section 16(b) Claim—Sale of Security, Insider, and Six-Month Elements**

Plaintiff alleges it has sufficiently pled each element of a Section 16(b) claim "based on Defendant['s] . . . purchases and sales of AutoZone stock." (ECF No. 23 at PageID 192.) Plaintiff avers Defendant (1) purchased shares of AutoZone stock on March 14, 2022, and April 7, 2022; (2) sold shares of AutoZone stock on December 16, 2021, and July 18, 2022; (3) was an insider at the time because he was "Chairman, President, and Chief Executive Officer [of AutoZone]"; and (4) sold the AutoZone stock within six months of purchase. (Id. (citing ECF No. 1 at ¶¶ 4–5, 7–8).)

Defendant "disputes that the Complaint identifies any 'purchase' of securities that is not exempt from Section 16(b)." (ECF No. 26 at PageID 215 (citing ECF No. 10-1 at PageID 37–42 (discussing Rule 16a-13)).)

Reserving its analysis on "purchase," the Court finds that each element besides "purchase" is met. Plaintiff has sufficiently pled Defendant sold the AutoZone stock, alleging a litany of sales on December 16, 2021 and July 18, 2022. (See ECF No. 1 at PageID 2–3.) Further, Plaintiff has sufficiently pled Defendant was an insider, as he is described as the "Chairman, President and Chief Executive Officer and as a Director of AutoZone." (ECF No. 1 at PageID 2.) Finally, Plaintiff sufficiently pled the AutoZone stock was sold within six months of acquisition for a profit of approximately $1,046,503, given the purchase dates of March 14, 2022, and April 7, 2022, compared with the sale dates of December 16, 2021, and July 18, 2022. (See id. at PageID 2–3.)

Because Defendant's argument for the element of "purchase" relates to the Rule 16a-13 exemption, the Court moves to the crux of Defendant's Motion: whether, at the current stage of litigation, Defendant can demonstrate Rule 16a-13 applies to his acquisition of AutoZone stock via GRAT annuities.

### C.   Purchase Exemption under Rule 16a-13

Defendant argues the GRAT annuities are exempt from Section 16(b) by operation of SEC Rule 16a-13. (ECF No. 10-1 at PageID 37–42.) Defendant contends his acquisition of the AutoZone stock from the GRATs "merely changed the form of his beneficial ownership over the stock, from indirect to direct, without changing his pecuniary interest in the securities." (ECF No. 10-1 at PageID 37.) Defendant bases his contention on the Kight Letter and on an independent reading of the SEC Act. (Id. at PageID 38–42.)

Plaintiff contests this, stating: (1) the Kight Letter is inapplicable because Defendant's GRATs have the power of substitution; and (2) Defendant's pecuniary interest in the AutoZone shares changed when he reacquired them. (ECF No. 23 at PageID 197–199.)

9

Given the stage of litigation and the fact that Defendant relied on statements outside the Complaint in his arguments, the Court finds Plaintiff's argument persuasive. The Court looks first at the Kight Letter and finds it does not control the outcome. Second, the Court conducts its own independent reading of Section 16(b) and the SEC Act and finds it favors Plaintiff's position.

       *i.*    *The Kight Letter*

The Court finds the Kight Letter does not control the case. First, as a no-action letter, it does not dictate the outcome. U.S. S.E.C. v. Sierra Brokerage Servs., Inc., 608 F. Supp. 2d 923, 948 n.24 (S.D. Ohio 2009), aff'd, 712 F.3d 321 (6th Cir. 2013) ("No-action letters, however, lack precedential effect on this Court."); see also Gryl ex rel. Shire Pharm. Group PLC v. Shire Pharm. Group PLC, 298 F.3d 136, 145 (2d Cir. 2002) ("SEC no-action letters constitute neither agency rule-making nor adjudication and thus are entitled to no deference beyond whatever persuasive value they might have").

Second, the Kight Letter is distinguishable from the present case. In the Kight Letter, the SEC determined Rule 16a-13 applied where the grantor of a GRAT would receive an annual payment in cash or in kind, given there was "no opportunity for any abuse of inside information." Peter J. Kight, SEC Staff No-Action Letter, Fed. Sec. L. Rep. P 77403 ¶ 77,403 (Oct. 16, 1997). The SEC made the determination there was no opportunity for abuse in part because "neither the grantor nor the trustee had any discretion." Morales v. Quintiles Transnat'l Corp., 25 F. Supp. 2d 369, 372 (S.D.N.Y. 1998) (discussing the Kight Letter). Here, however, "the 'opportunity' existed for [Defendant] to abuse inside information by substituting property of equal value to get the GRAT shares back just before the shares appreciated drastically," see id., because there is a reasonable inference that Defendant could exercise his discretion by

10

substituting the stock in the GRATs with other property of equal value.  (ECF No. 1 at PageID 6 ("[t]he GRATs at issue here . . . almost certainly had the power of substitution").)  Indeed, Defendant does not contest the GRATs had the power of substitution; he only states he did not exercise this power.  (See ECF No. 10-1 at PageID 44.)

Defendant contends that Quintiles is inapplicable because, unlike the defendant in Quintiles, he did not exercise any substitution of assets.  See 25 F. Supp. 2d at 370; (ECF No. 10-1 at PageID 44; ECF No. 26 at PageID 219–20.)  However, Defendant is mistaken, as the Quintiles court based its conclusion on the opportunity to exercise substitution, not the exercising of substitution itself:

> "[T]he creator of the GRAT [in the Kight Letter] represented to the SEC that 'the creation of the GRAT and the annuity payments would provide no opportunity for any abuse of inside information.' Conversely, by the terms of this GRAT, grantor . . . 'had the right [at any time] during the life of the trust to get the Quintiles stock back by substituting other property of equal value,' which he did by substituting a promissory note. Therefore, the 'opportunity' existed for Smith to abuse inside information by substituting property of equal value to get the GRAT shares back just before the shares appreciated drastically. The Kight letter is therefore inapplicable here."

25 F. Supp. 2d at 372.

Here, like the defendant in Quintiles, there is a reasonable inference that Defendant had the ability to substitute assets.  Id.  Thus, Defendant had the "opportunity for . . . [an] abuse of inside information," Peter J. Kight, SEC Staff No-Action Letter, Fed. Sec. L. Rep. P 77403 ¶ 77,403 (Oct. 16, 1997), via substitution, and so Quintiles supports the Court's conclusion that the Kight Letter is inapplicable.  See 25 F. Supp. 2d at 372.

      *ii.*      *Section 16(b) Analysis*

While the Kight Letter does not guide the Court's analysis, the Court independently analyzes whether Rule 16a-13 applies under the language of the SEC Act[4] and relevant regulations. Cf. Shire Pharms., 298 F.3d at 145 (2d Cir. 2002) ("'[e]ven when district courts have ruled in accord with no-action letters, they almost always have analyzed the issues independently of the letters'").

In analyzing whether Rule 16a-13 applies to Defendant's GRAT annuities such that they are exempt from Section 16(b), the Court examines two requirements: (1) whether there was no change in Defendant's pecuniary interest in the AutoZone stock; and (2) whether there was only a change in the form of Defendant's beneficial ownership of the AutoZone stock. 17 C.F.R. § 240.16a-13.

      a.      <u>Pecuniary Interest Analysis</u>

A "pecuniary interest" is "the opportunity, directly or indirectly, to profit or share in any profit derived from a transaction in the subject securities." 17 C.F.R. § 240.16a-1(a)(2)(i). An "indirect pecuniary interest" includes "[a] person's interest in securities held by a trust." 17 C.F.R. § 240.16a-1(a)(2)(ii)(E).

Here, Defendant's argument relies solely on the fact that he was the "grantor, trustee, and sole lifetime beneficiary of the GRATs." (ECF No. 26 at PageID 218 (citing ECF No. 1 at PageID 4, 6).) Defendant argues that because of his grantor, trustee, and beneficiary status, he "held the sole pecuniary interest in the securities during the term of the GRATs." (Id.)

---

[4] In passing the SEC Act, Congress exempted from short-swing liability "any transaction or transactions which the Commission by rules and regulations may exempt as not comprehended within the purpose of this subsection." 15 U.S.C. § 78p(b). This is an authorization of the SEC's Rule 16a-13 exemption, satisfying Loper Bright. See 144 S. Ct. at 2247 (2024) ("the question that matters [is:] [d]oes the statute authorize the challenged agency action?").

12

However, the Court cannot consider Defendant's statement regarding his trustee and beneficiary status.  See supra Section III.A.  Even considering Defendant's grantor status, that only proves he had a direct pecuniary interest in the AutoZone stock before placing it in the GRATs.  See 17 C.F.R. § 240.16a-1(a)(2)(i).  However, Defendant cannot show he had a pecuniary interest in the AutoZone stock when it was in the GRATs, as his statement regarding his trustee and beneficiary status cannot be considered.  See supra Section III.A.  Beyond this, Defendant has made no showing that he had a pecuniary interest in the AutoZone stock while it was in the GRATs.  Indeed, he has demonstrated neither an "interest in income generated by the trust (e.g., a right to capital gains realized by the trust) [n]or an interest in the corpus of the trust (e.g., a right to receive a distribution of the trust's assets)."  (See ECF No. 10-3 at PageID 55 (describing how a pecuniary interest may arise); see also id. at PageID 58 (describing the Kight Letter in context of that GRAT settlor's trustee and sole beneficiary status).)

An illustrative case here is Donoghue v. Gad, where the court analyzed a motion to dismiss based on the Rule 16a-13 exemption to Section 16(b) short-swing liability.  See generally No. 21 CIV. 7182 (KPF), 2022 WL 3156181 (S.D.N.Y. Aug. 8, 2022).  There, the court considered some, but not all of the defendant's exhibits, and found that the available evidence was insufficient to show exemption under Rule 16a-13.  Id. at *3, 7.  Like the defendant in Gad whose "argument under Rule 16a-13 relies almost exclusively on documents that the Court cannot consider in resolving his motion," id. at *3, Defendant's argument here relies exclusively on his statements regarding his grantor, trustee, and beneficiary status.  (See ECF No. 10-1 at PageID 37–38.)  Furthermore, while the documents submitted by the defendant in Gad demonstrated his pecuniary interest under Rule 16a-13, Gad, 2022 WL 3156181, at *3, here, the documents submitted by Defendant do not demonstrate his pecuniary interest at all.

13

Rather, Defendant's exhibits are either publicly available SEC documents, articles, or treatises on Section 16(b). See supra Section III.A (citing ECF Nos. 10-1, 10-2, 10-3, 10-4). Thus, "the Court cannot conclude based on these limited observations . . . that whatever pecuniary interest [Defendant] held in the shares prior to [his contributions] remained the same after that date." See Gad, 2022 WL 3156181, at *8.

b.  Beneficial Ownership Analysis

A beneficial owner is "any person who, directly or indirectly, . . . has or shares a direct or indirect pecuniary interest in the equity securities." 17 C.F.R. § 240.16a-1(a)(2).

Defendant's beneficial ownership argument fails for the same reason as its pecuniary interest argument—it is based on his status as the "grantor, trustee, and sole lifetime beneficiary of the GRATs." (ECF No. 26 at PageID 218 (citing ECF No. 1 at PageID 4, 6)); see supra Section III.C.ii.a. Thus, "the Court cannot conclude based on these limited observations that Defendant in fact held a beneficial interest in the [AutoZone] shares." See Gad, 2022 WL 3156181, at *8.

D.  Purchase Element of Section 16(b)[5]

Given the Rule 16a-13 exemption does not apply, the Court finds Plaintiff sufficiently alleged the element of "purchase" for short-swing liability. (See ECF No. 1 at PageID 2.) Indeed, "[e]very transaction which can reasonably be defined as a purchase will be so defined, if the transaction is of a kind which can possibly lend itself to the speculation encompassed by § 16(b)." Champion Home Builders Co. v. Jeffress, 490 F.2d 611, 615 (6th Cir. 1974) (quoting

---

[5] Because the Court finds the Rule 16a-13 exemption does not apply at this stage of litigation, it does not reach Plaintiff's alternative argument that regardless of the details of the GRATs, there was a change in pecuniary interest. (See ECF No. 23 at PageID 197.) The Court similarly will not address Plaintiff's caselaw argument. (See id. at PageID 202.)

Ferraiolo v. Newman, 259 F.2d 342, 345 (6th Cir. 1958)). Plaintiff has sufficiently alleged that Defendant obtained the AutoZone stock and profited off it, which is enough to show a purchase "that best serves the congressional purpose of curbing short-swing speculation by corporate insiders." Id. (quoting Reliance, 404 U.S. at 424). Given the current stage of litigation, the Court can draw a "reasonable inference[]" that Defendant could have engaged in substitution for short-swing profit. Hill, 409 F.3d at 720.

### IV.  CONCLUSION

For the reasons discussed above, Defendant's Motion to Dismiss is **DENIED**. Plaintiff has sufficiently alleged facts to show Defendant's acquisition of AutoZone stock via the annuity payments from the GRATs meets each element for Section 16(b) liability.

Further, because the Court has denied Defendant's Motion to Dismiss, Nominal Defendant's Motion to Dismiss, (see ECF No. 16), is also **DENIED**.

**SO ORDERED**, this 15th day of November, 2024.

/s/ Jon P. McCalla
JON P. MCCALLA
UNITED STATES DISTRICT COURT JUDGE