# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# WESTERN DIVISION

|  |  |
|---|---|
| NOSIRRAH MANAGEMENT, LLC, <br>     Plaintiff, <br><br> v. <br><br> AUTOZONE, INC., <br>     Nominal Defendant, <br><br> and <br><br> WILLIAM C. RHODES III, <br>     Defendant. | Case No. 2:24-cv-2167-JPM-tmp |

## ORDER ON MOTIONS FOR SUMMARY JUDGMENT

Before the Court are Motions for Summary Judgment, filed by Plaintiff Nosirrah Management, LLC ("Plaintiff" or "Nosirrah") and Defendant William C. Rhodes ("Rhodes") on February 21, 2025. (ECF Nos. 64, 67.) For the reasons set forth below, the Court **GRANTS IN PART** and **DENIES IN PART** each Motion.

**I.  BACKGROUND**

On March 13, 2024, Plaintiff filed its Complaint against Rhodes and Nominal Defendant AutoZone ("Nominal Defendant" or "AutoZone") (collectively, "Defendants") seeking to recover short-swing profits under 15 U.S.C. § 78p(b), otherwise known as Section 16(b) of the Securities Exchange Act of 1934 ("Section 16(b)"). (ECF No. 1.)

The Court has subject matter jurisdiction pursuant to 15 U.S.C. § 78aa. (Id. at PageID 1.)

A.    **Factual Background**[1]

Plaintiff is a shareholder of AutoZone. (ECF No. 76 at PageID 1029.) Rhodes served as Chairman, President, Chief Executive Officer, and a Director of AutoZone from 2021 through 2023. (Id.)

In 2020, Rhodes created two grantor retained annuity trusts ("GRATs").[2] (Id. at PageID 1030–31.) The first, created around March 13, 2020, is the "William C. Rhodes, III 2020 Trust A" ("GRAT A"). (Id. at PageID 1030.) The second, created around April 2, 2020, is the "William C. Rhodes, III 2020 Trust B" ("GRAT B"). (Id. at PageID 1031.) Both GRAT A and GRAT B (collectively, the "GRATs") had two year terms. (Id. at PageID 1032.) At the end of the terms, the remainder of the property in the GRATs went to Rhodes' children as remainder beneficiaries. (Id. at PageID 1036.)

Rhodes was the sole grantor, trustee, and annuitant of the GRATs. (Id. at PageID 1037–38.) During the terms of the GRATs, Rhodes had the right "to reacquire the property of the trust by substituting other property of an equal fair market value" subject to the terms of the GRATs. (Id. at PageID 1039 (citing ECF No. 69-3 at PageID 845; ECF No. 69-4 at PageID 875).)

On March 16, 2020, Rhodes contributed 5,000 shares of AutoZone stock to GRAT A. (Id. at PageID 1030.) On April 2, 2020, Rhodes contributed 5,000 shares of AutoZone stock to GRAT B. (Id. at PageID 1031.)

On March 14, 2022, Rhodes received an annuity of 1,460 shares of AutoZone stock from GRAT A. (See id. at PageID 1040.) On April 7, 2022, Rhodes received an annuity of 1,068

---

[1] The factual background relies on undisputed facts submitted by Plaintiff and Rhodes. (See ECF Nos. 75, 76.)
[2] A GRAT is an irrevocable trust which "exists for a specified period of time." (ECF No. 10-3 at PageID 57.) It is "funded with assets (frequently stock) contributed by the grantor." (ECF No. 10-1 at PageID 31 (quoting Peter J. Romeo & Alan L. Dye, Section 16 Treatise and Reporting Guide § 6.02(3)(c), at 557 (5th ed. 2019)).) "The annuity payments to the grantor can be made in cash or in kind (e.g., in securities valued at their fair market value on payment date)." (ECF No. 10-3 at PageID 57.) "After the expiration of the annuity payment period, the assets remaining in the GRAT, if any, are transferred to the residual beneficiaries." (Id.)

shares of AutoZone stock from GRAT B. (Id. at PageID 1041–42.) On July 18, 2022, Defendant sold 2,310 shares of AutoZone stock on the open market, for a total of $1,186,377.99. (Id. at PageID 1043–44.)

On August 5, 2022, Plaintiff demanded AutoZone pursue disgorgement of Rhodes' alleged short-swing profits from the July 2022 sale. (See id. at PageID 1044.) AutoZone declined to do so. (Id.)

B.     **Procedural Background**

On March 13, 2024, Plaintiff filed its Complaint. (ECF No. 1.) On November 27, 2024, Defendants filed their Answers. (ECF Nos. 31, 32.)[3]

On February 21, 2025, Plaintiff and Rhodes filed their Motions for Summary Judgment, along with their accompanying Statements of Undisputed Facts. (ECF Nos. 64–69.) On March 21, 2025, Plaintiff and Rhodes filed their Responses in Opposition and their Responses to each other's Statement of Undisputed Facts. (ECF Nos. 73–76.) On April 4, 2025, the Parties filed their individual Replies. (ECF Nos. 77, 78.)

**II.    LEGAL STANDARD**

A moving party is entitled to summary judgment "if [it] shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if "proof of that fact would establish or refute an essential element of the cause of action or defense." Bruederle v. Louisville Metro Gov't, 687 F.3d 771, 776 (6th Cir. 2012).

---

[3] Rhodes first moved the Court to dismiss the Complaint for failure to state a claim. (See ECF No. 10.) AutoZone filed its own motion to dismiss pursuant to its nominal defendant status, moving the Court to dismiss AutoZone as a defendant if the Court granted Rhodes' motion to dismiss. (See ECF No. 16-1 at PageID 102–03.) On November 15, 2024, the Court denied both motions. (ECF No. 30.)

"In considering a motion for summary judgment, [the] court construes all reasonable inferences in favor of the non-moving party." Robertson v. Lucas, 753 F.3d 606, 614 (6th Cir. 2014) (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

The standard is the same when parties file cross-motions for summary judgment. Taft Broad. Co. v. United States, 929 F.2d 240, 248 (6th Cir. 1991). "[O]n cross-motions for summary judgment, 'the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration.'" B.F. Goodrich Co. v. U.S. Filter Corp., 245 F.3d 587, 592 (6th Cir. 2001).

## III. ANALYSIS

Plaintiff and Rhodes dispute two issues: (1) whether Plaintiff has standing to bring its claim; and (2) whether Rhodes is liable under Section 16(b). (See ECF No. 67-1 at PageID 675; ECF No. 64-1 at PageID 522.) The Court addresses each in turn.

### A. Standing

#### *i. Legal Standard*

"[T]he core component of standing is an essential and unchanging part of the case-or-controversy requirement of Article III." Lujan v. Defs. of Wildlife, 504 U.S. 555, 560 (1992). "There are three elements to standing. The plaintiff 'must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision.'" Buchholz v. Meyer Njus Tanick, PA, 946 F.3d 855, 861 (6th Cir. 2020) (quoting Lujan, 504 U.S. at 560). "The injury in fact must be both (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." Id. (cleaned up). "The plaintiff carries the burden of establishing those three elements, and at the pleading stage, the plaintiff must clearly allege facts demonstrating each element." Id.

    *ii.*  *Analysis*

  Rhodes argues Plaintiff cannot establish it suffered an injury in fact from the alleged Section 16(b) violation. (ECF No. 64-1 at PageID 523.) Rhodes argues the only injury alleged is a pure statutory violation, which does not confer constitutional standing. (See id. at PageID 523–24 (citing R.K. by & through J.K. v. Lee, 53 F.4th 995, 999 (6th Cir. 2022); Spokeo, Inc. v. Robins, 578 U.S. 330, 340 (2016)).)

  Plaintiff argues it has standing to bring the instant suit because it is pursuing its action on behalf of AutoZone, and thus it is not required to directly suffer actual damages. (ECF No. 67-1 at PageID 694.) Plaintiff argues the "harm" which gives it constitutional standing comes from the execution of a short-swing trade by an insider—here, Rhodes. (Id. at PageID 695 (citing Packer ex rel. 1-800-Flowers.Com, Inc. v. Raging Cap. Mgmt., LLC, 105 F.4th 46, 53 (2d Cir. 2024), cert. denied sub nom. Raging Cap. Mgmt., LLC v. Packer, No. 24-408, 2024 WL 4743106 (U.S. Nov. 12, 2024).)

  The Court finds Plaintiff has constitutional standing to bring its suit. A useful case here is Packer. See 105 F.4th at 46. In Packer, a shareholder brought a derivative suit alleging defendants violated Section 16(b). See id. at 50. The Second Circuit held Section 16(b) imposed a "fiduciary duty" on corporate insiders and "confer[red] on securities issuers 'an enforceable legal right to expect [the fiduciary] to refrain from engaging in any short-swing trading." Id. at 53–54 (citing Donoghue v. Bulldog Invs. Gen. P'ship, 696 F.3d 170, 177–78 (2d Cir. 2012)). The deprivation of this "enforceable legal right" "inflicts an injury sufficiently concrete to confer constitutional standing." Id. at 54.

  Like the shareholder in Packer, Plaintiff brings its Section 16(b) claim on behalf of Nominal Defendant AutoZone, (ECF No. 1 at PageID 7). See 105 F.4th at 50. Like the

5

shareholder in Packer, Plaintiff alleges the corporate insider—here, Rhodes—violated its "fiduciary duty" and "engag[ed] in . . . short-swing trading," (see ECF No. 1 at PageID 6–7). See 105 F.4th at 53–54. Thus, Plaintiff has clearly alleged it suffered a concrete injury in fact such that it has constitutional standing. See id. at 54.

Rhodes argues the Court should not follow the reasoning of Packer, as (1) it fails to adhere to the Supreme Court's holding in TransUnion LLC v. Ramirez, 594 U.S. 413 (2021); and (2) the Second Circuit's decision is not binding on the Court. (See ECF No. 64-1 at PageID 524.) The Court rejects these arguments.

First, the Packer court explicitly addressed the Supreme Court's holding in TransUnion, finding the case did not undermine the constitutional standing of a shareholder where the shareholder alleged a Section 16(b) violation. See 105 F.4th at 53–54. To establish an injury in fact, TransUnion requires a "close historical or common-law analogue" to the alleged injury. See 594 U.S. at 424. The Packer court found an analogue in common-law breach of fiduciary duty. 105 F.4th at 54 ("Just as a common-law fiduciary . . . must account to the beneficiary 'for all the gain which he has made,' a statutory fiduciary who engages in short-swing trading owes its gains to the corporation under Section 16(b). The deprivation of these profits inflicts an injury sufficiently concrete to confer constitutional standing."). The Court finds this analysis persuasive.

Second, while not binding on the Court, the Second Circuit's reasoning has "great utility" because it "addresses exactly . . . the same issue as the [C]ourt confronts." See Smith v. Astrue, 639 F. Supp. 2d 836, 843 (W.D. Mich. 2009). The Court finds the Packer court's reasoning leads to a logical, straightforward result, and thus adopts its reasoning. See id. ("This court's decision whether to follow persuasive authority—such as . . . any decisions from outside [the

6

Sixth Circuit]—turns on factors such as whether the persuasive authorities employ logical reasoning [and] . . . comport with the letter and spirit of the binding precedents.")

 *iii.* *Conclusion*

Because Plaintiff clearly alleges facts demonstrating an actual, concrete injury in fact, it has constitutional standing.  See Packer, 105 F.4th at 54.

 **B.** **Section 16(b) Liability**

 *i.* *Law*

"Section 16(b) provides that officers, directors, and holders of more than 10% of the listed stock of any company shall be liable to the company for any profits realized from any purchase and sale or sale and purchase of such stock occurring within a period of six months." Sterman v. Ferro Corp., 785 F.2d 162, 165 (6th Cir. 1986) (cleaned up).  Its purpose is to "prevent the unfair use of information which may have been obtained by such beneficial owner by reason of his relationship to the issuer." Id. (cleaned up).  "Because Congress intended [S]ection 16(b) to be a 'relatively arbitrary rule capable of easy administration,' courts generally interpret the statute so as to preserve its 'mechanical quality.'" Winston v. Fed. Exp. Corp., 853 F.2d 455, 456 (6th Cir. 1988) (citing Reliance Elec. Co. v. Emerson Elec. Co., 404 U.S. 418, 425 (1972)) (other internal citation omitted).

As is clear from the statutory language, "liability under Section 16(b) does not attach unless the plaintiff proves that there was (1) a purchase and (2) a sale of securities (3) by an officer or director of the issuer or by a shareholder who owns more than ten percent of any one class of the issuer's securities (4) within a six-month period." Gwozdzinsky v. Zell/Chilmark Fund, L.P., 156 F.3d 305, 308 (2d Cir. 1998).  A shareholder may bring suit to recover the short-

swing profit, but must do so on behalf of the security issuer, where the profit is recovered by the issuer.  See Olagues v. Timken, 908 F.3d 200, 204 (6th Cir. 2018).

        *ii.*    *Analysis*

The Parties do not dispute that Rhodes (1) was an officer or director under Section 16(b); (2) sold AutoZone stock; and (3) sold the AutoZone stock within six months of receiving it from the GRATs.  (See ECF No. 76 at PageID 1029–30, 1043.)  Additionally, Plaintiff brings its suits on behalf of AutoZone, the security issuer.  (See ECF No. 1.)  Thus, the last element in deciding Section 16(b) liability is whether Rhodes purchased the stock.  See Gwozdzinsky, 156 F.3d at 308.

The Parties main dispute, however, centers around whether the exemption under SEC Rule 16a-13 (the "Rule 16a-13 Exemption") applies to the transaction at issue.  (See ECF No. 64-1 at PageID 526; ECF No. 67-1 at PageID 687 ("Rhodes'[] sole defense to liability is his claim that the acquisitions on March 14 and April 7, 2022[,] are not purchases under Section 16(b), but rather are exempt transactions under [the Rule 16a-13 Exemption]. This is an issue of law for the Court to decide based on undisputed facts.").)

"The SEC . . . has provided specific exemptions from Section 16(b)'s general requirements." Jordan v. Flexton, 729 F. App'x 282, 285 (5th Cir. 2018) (cleaned up).  The Rule 16a-13 Exemption states "[a] transaction . . . that effects only a change in the form of beneficial ownership without changing a person's pecuniary interest in the subject equity securities shall be exempt from [Section 16(b)]."  17 C.F.R. § 240.16a-13.

Thus, the Court examines two requirements as to whether the Rule 16a-13 Exemption applies here: (1) there was no change in Defendant's pecuniary interest in the AutoZone stock;

8

and (2) there was a change in the form of Defendant's beneficial ownership of the AutoZone stock. See id.

        a.        Pecuniary Interest Analysis

A "pecuniary interest" is "the opportunity, directly or indirectly, to profit or share in any profit derived from a transaction in the subject securities." 17 C.F.R. § 240.16a-1(a)(2)(i). An "indirect pecuniary interest" in a class of securities includes "[a] person's interest in securities held by a trust, as specified in § 240.16a-8(b)." 17 C.F.R. § 240.16a-1(a)(2)(ii)(E).

Here, Rhodes retained an interest in the AutoZone stock in the GRATs because he was the "sole [g]rantor, [t]rustee, and [a]nnuitant" of the GRATs. (ECF No. 75 at PageID 1014, 1020). He thus had an indirect pecuniary interest in the AutoZone stock when it was held in the GRATs. See 17 C.F.R. § 240.16a-1(a)(2)(ii)(E). Because of this indirect pecuniary interest, the AutoZone stock was attributable to Rhodes. See 17 C.F.R. § 240.16a-8(b)(2).

When Rhodes reacquired the AutoZone stock via the GRAT annuities, he then gained a direct pecuniary interest, as he gained the opportunity to directly profit from the AutoZone stock. See 17 C.F.R. § 240.16a-1(a)(2)(i).

Thus, when Rhodes reacquired the AutoZone stock via the annuities, he maintained a pecuniary interest in the securities, even as it shifted from an indirect to direct pecuniary interest. See 17 C.F.R. § 240.16a-1(a)(2)(i).

Plaintiff argues 17 C.F.R. § 240.16a-1(a)(2)(ii)(E) does not apply, and thus Rhodes had no pecuniary interest, indirect or direct, in the AutoZone stock when it was in the GRATs. (See ECF No. 67-1 at PageID 689–90.) In support, Plaintiff argues Rhodes had "no opportunity to profit from a transaction involving the AutoZone [stock] in the GRAT[s]" when the AutoZone stock was in the GRATs. (See id.; ECF No. 73 at PageID 980.)

9

The Court finds Plaintiff's argument unavailing. Plaintiff seems to dispute the plain text of the regulation, which enumerates an indirect pecuniary interest as an "interest in securities held by a trust." 17 C.F.R. § 240.16a-1(a)(2)(ii)(E). It is undisputed that Rhodes held an interest in the securities in the GRATs, as he was the "sole [g]rantor, [t]rustee, and [a]nnuitant." (See ECF No. 75 at PageID 1014, 1020). Furthermore, when the AutoZone stock was in the GRATs, Rhodes had the indirect opportunity to profit from the AutoZone stock through his annuity payments. (See ECF No. 76 at PageID 1032.)

Indeed, the SEC has indicated a pecuniary interest "includes an interest in the income or the corpus of the trust." See Ownership Reports and Trading by Officers, Directors and Principal Security Holders, Exchange Act Release No. 34-28,869, 48 SEC Docket 4 n.73 (Feb. 26, 1991) [hereinafter "Act Release No. 34-28,869"]. An interest in the corpus of a trust includes a "right to receive a distribution of the trust's assets." Peter J. Romeo & Alan L. Dye, Section 16 Treatise and Reporting Guide § 6.02[3][c], at 557 (5th ed. 2019). Because Rhodes was the only person with the right to receive a distribution from the GRATs, (ECF No. 75 at PageID 1015), Rhodes retained a pecuniary interest in the AutoZone stock. See 17 C.F.R. § 240.16a-1(a)(2)(ii)(E); Act Release No. 34-28,869.

Plaintiff also argues Rhodes did not establish that he "had the same pecuniary interest in the AutoZone [stock] in the GRATs as when he received them from the GRATs as annuity payments." (ECF No. 73 at PageID 979; ECF No. 77 at PageID 1075–76) This argument, however, is unavailing. The form of pecuniary interest is not important, as long as the pecuniary interest itself is not extinguished. The text of the Rule 16a-13 Exemption focuses on a change "in the form of beneficial ownership," but not in the form of the pecuniary interest. See 17 C.F.R. § 240.16a-13. The Rule 16a-13 Exemption simply asks if there is a change in "a person's

10

pecuniary interest in the subject equity securities." Id.  Under established doctrines of statutory interpretation, the Court presumes this was intentional such that the SEC considered the form of pecuniary interest immaterial.  See Russello v. United States, 464 U.S. 16, 23 (1983) ("Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.") (citation omitted); Black & Decker Corp. v. Comm'r, 986 F.2d 60, 65 (4th Cir. 1993) ("Regulations, like statutes, are interpreted according to canons of construction.").

Plaintiff puts forth a policy argument, arguing Rhodes' interpretation of the SEC Rules ignores the text and purpose of the statute.  (ECF No. 73 at PageID 979.)  This argument is unavailing.  Regardless of the nature of the SEC Rules, Congress authorized the Rule 16a-13 Exemption because it gave the SEC power to exempt transactions which it may not have comprehended, see 15 U.S.C. § 78p(b).  See Loper Bright Enters. v. Raimondo, 603 U.S. 369, 375 (2024) ("[T]he question that matters [is:] [d]oes the statute authorize the challenged agency action?").  Because the transaction at issue falls within the Rule 16a-13 Exemption, it is outside the scope of liability.

Finally, in its Reply, Plaintiff argues Rhodes had a qualified interest, not a pecuniary interest, in the annuity payments from the GRATs.  (ECF No. 77 at PageID 1076–78.)  Plaintiff did not raise this argument in its Motion or its Response.  (Cf. ECF Nos. 67, 73.)  Generally, this waives the argument.  See Scottsdale Ins. Co. v. Flowers, 513 F.3d 546, 553 (6th Cir. 2008).  To depart from this general rule, the Court considers

> (1) whether the issue is a question of law or whether it requires a factual determination; (2) whether the issue's resolution is clear; (3) whether the failure to consider the issue would result in a miscarriage of justice or a denial of

11

>substantial justice; and (4) the parties' rights to have an issue considered by both trial and appellate courts.

Ryan v. Hazel Park, 279 F. App'x 335, 339 (6th Cir. 2008) (citation omitted). Whether Rhodes had a pecuniary interest in the AutoZone stock is a question of law, has a clear resolution given the SEC Rules, and a failure to consider Plaintiff's argument would not result in a "miscarriage of justice." See id. Even if the fourth factor weighs in favor of considering the argument, the Court finds on balance the above factors weigh against departing from this general rule. See id. The Court thus does not consider Plaintiff's argument regarding qualified interest. See id.

    b.  Beneficial Ownership Analysis

A beneficial owner is "any person who, directly or indirectly, . . . has or shares a direct or indirect pecuniary interest in the equity securities." 17 C.F.R. § 240.16a-1(a)(2).

Rhodes had an indirect pecuniary interest in the AutoZone stock when it was in the GRATs. See supra Section III.B..ii.a. Rhodes was thus an indirect beneficial owner at that time. See 17 C.F.R. § 240.16a-1(a)(2); see also United States Security and Exchange Commission, STATEMENT OF CHANGES OF BENEFICIAL OWNERSHIP OF SECURITIES (Form 4), at 4 ("[t]he nature of indirect ownership shall be stated as specifically as possible; for example, . . . '[b]y X Trust'").

After he reacquired the AutoZone stock via the annuity payments, Rhodes became a direct beneficial owner, as he obtained a direct pecuniary interest through his direct ability to profit from the AutoZone stock. See 17 C.F.R. § 240.16a-1(a)(2); see also United States Security and Exchange Commission, STATEMENT OF CHANGES OF BENEFICIAL OWNERSHIP OF SECURITIES (Form 4), at 4 ("Securities beneficially owned directly are those held in the reporting person's name or in the name of a bank, broker or nominee for the account of the reporting person."). Thus, when Rhodes reacquired the AutoZone stock via the

GRAT annuities, his beneficial ownership changed in form from indirect to direct. See 17 C.F.R. § 240.16a-1(a)(2). Plaintiff does not dispute this. (Cf. ECF Nos. 73, 77.)

Furthermore, Rhodes' children's status as remainder beneficiaries does not cut against Rhodes' beneficial ownership of the AutoZone stock. Rhodes' children, as holders of remainder interests in the GRATs without power to exercise or share investment control over the GRATs, (see ECF No. 76 at PageID 1037–38), did not have beneficial ownership over the AutoZone stock. See 17 C.F.R. §240.16a-8(c). This leaves only Rhodes as a beneficial owner. See id.; 17 C.F.R. § 240.16a-1(a)(2).

Plaintiff argues this interpretation ignores Rule 16a-8(c)'s "function . . . within the overall regulatory scheme[, which] is to set forth circumstances under which persons are subject to Section 16(b) by virtue of their relationship to a trust that holds at least 10% of an issuer securities." (See ECF No. 73 at PageID 983.) This argument, however, is unavailing. Plaintiff again seems to argue against the plain text of the regulation. (See id.); 17 C.F.R. §240.16a-8(c). While the overall regulatory scheme under Section 16(b) may be expansive, the text of Rule 16a-8(c) is clear: holders of remainder interests in a trust, without investment control over the trust, are not beneficial owners for Section 16(b) purposes. See 17 C.F.R. § 240.16a-8(c).

       *iii.*    *Conclusion*

Because Defendant's reacquisition of the AutoZone stock through the GRAT annuity payments was a "transaction . . . that effect[ed] only a change in the form of beneficial ownership without changing [Defendant's] pecuniary interest in the subject equity securities," it is thus "exempt from [S]ection 16 of the [SEC] Act." See 17 C.F.R. § 240.16a-13.

IV.    CONCLUSION[4]

For the reasons set forth below, the Court **GRANTS IN PART** and **DENIES IN PART** each Motion.  Plaintiff has Article III standing to bring its case.  Rhodes' transfer involving the GRATs is exempted under the Rule 16a-13 Exemption.

Because the Rule 16a-13 Exemption applies, Plaintiff's case is **DISMISSED WITH PREJUDICE**.

Accordingly, Rhodes' request for a hearing on the Motions, (ECF No. 64 at PageID 514–15), Plaintiff's Motion in Limine, (ECF No. 58), and Plaintiff's Motion to Strike Certain Affirmative Defenses, (ECF No. 33), are **DENIED AS MOOT**.

**SO ORDERED**, this the 14th day of April, 2025.

/s/ Jon P. McCalla
JON P. MCCALLA
UNITED STATES DISTRICT JUDGE

---

[4] Since the Court disposes of the action through an independent reading of the SEC Act, it does not rely on Plaintiff's other arguments involving the Kight letter and Rhodes' power of substitution.  (See ECF No. 64-1 at PageID 532–55; ECF No. 73 at PageID 985–88.)